IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE MONOTYPE CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| RED HAT, INC., a Delaware corporation, | ) ) ) ) |
| Defendant. | ) |

CASE NO. 02 C 3713

Judge Nordberg
Magistrate Judge Geraldine Soat Brown

FILED JUL 19 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JUL 23 2002

## AFFIDAVIT OF PRESTON BROWN

PRESTON BROWN, being first duly sworn, deposes and says:

### Background

1. I am currently a Director of Engineering at Red Hat, Inc. ("Red Hat"). This affidavit is based on my personal knowledge except where otherwise indicated.

2. I have a degree in Computer Science from Yale University. I have been employed by Red Hat since 1998, when it was known as Red Hat Software.

3. Upon joining Red Hat, I became a member of the Linux development team. I have worked on a number of core infrastructure pieces of Red Hat Linux over the last several years, including, among many others, the font subsystem. I have also served in various management roles at Red Hat.

### Font Software Design

4. I am familiar with the manner in which font software is usually structured by software designers.



5.  In general, font software is written to reproduce the shapes of letterforms for different typefaces. The shape of each letterform is pre-determined by the designers of the typefaces. Some of these typefaces, such as Times New Roman, date back 70 years.

6.  What font software typically does is merely map points to be displayed or printed, so that the end product will match as closely as possible the shapes of the previously designed typefaces.

7.  Bitmap fonts are defined as actual pictoral representations of the typeface at a certain size. "TrueType" scalable fonts describe typefaces by a series of vectors in a defined proportion to each other. Adjusting the length of any one vector effectively adjusts all of the vectors, thus providing scalability. Adobe PostScript Type 1 is an alternative format for scalable fonts.

8.  The allegedly infringing font software is in Adobe PostScript Type 1 format. I understand that Monotype's font software at issue in this case is in TrueType format.

9.  The font software that is allegedly infringed is not an independently operable program. It consists of nothing more than a compilation of the vectors which define the typefaces shapes.

10. The allegedly infringing font software is also not an independently operable program. It consists of definitions of certain typeface shapes in a different format than Monotype's font software.

11. Font software cannot itself print or display the points that it maps. Other overlying font rendering software for print or screen display (such as that contained in word processing applications) performs these functions.

### Alleged Trademark Use of Terms Times New Roman and Arial

12. I have reviewed Exhibits L and M to Monotype's preliminary injunction brief, which appear to be copies of screen shots showing the phrases "Times New Roman (Ult1mo)" and "Arial (Ult1mo)." Monotype states that these screen shots were created with the "KWord" word processing system on a computer running Red Hat's operating system.

13. KWord is not itself part of the Red Hat Linux operating system. Rather, it is an independent application, created by a third party and distributed under license.

14. Therefore, Monotype's Exhibits L and M do not show that the Red Hat Linux operating system displays the terms Times New Roman and Arial to users.

15. A user of the Red Hat Linux operating system as it formerly incorporated the font software in question would not even see the terms Times New Roman and Arial until after making the decision to obtain the operating system, installing it, and opening up a particular application which provides font options.

16. The only other way for a user of the Red Hat Linux operating system to see the terms Times New Roman and Arial would be to search through the entire source code for the few references to those terms embedded within lengthy strings describing font origins and properties.

17. There has never been any use of the terms Times New Roman or Arial to market, promote, distinguish or identify the source of Red Hat's operating system software.

18. The terms Times New Roman and Arial have not appeared on any packaging or manuals for Red Hat's software.

19. Additionally, the listing of the term "(Ult1mo)" in the KWord word processing program acts as a source identifier, informing users that these versions of Times New Roman and

Arial were created by the programmer who displays the name "Ult1mo" or "ulT1mo" on all of his software.

20. The phrases Times New Roman and Arial also appear within Red Hat's software in a listing of font programs. See Exhibit 1 hereto. Each reference to Times New Roman and Arial in that list is preceded by the source identifier "ulT1mo." The first field in the string, where the term "ulT1mo" appears, indicates the font foundry or origin. For any font described as originating from Monotype, this field would contain the term "AMT" or "Monotype," rather than "ulT1mo."

### Measures Taken By Red Hat to Eliminate Alleged Infringement

21. Since receiving Monotype's complaints about the inclusion of Arial and Times New Roman typefaces in Red Hat Linux software, Red Hat has taken a number of measures to address Monotype's concerns – even though Red Hat does not believe that Monotype's position is legally sound.

22. Red Hat's downloadable Linux operating system no longer includes the allegedly infringing material.

23. Red Hat has destroyed all of its inventory of discs that contained the allegedly infringing material, and has re-burned discs without the allegedly infringing material.

24. The only original equipment manufacturer (OEM) that replicates Red Hat's software has been provided with a revised version of the Red Hat Linux operating system without the allegedly infringing material. All future replications of Red Hat's software will use this corrected version.

25. Red Hat has no plans to include the allegedly infringing material in its operating system in the future.

### Harm to Red Hat Which Would Be Caused By Requested Preliminary Injunction

26. The only aspect of Monotype's requested preliminary injunction that Red Hat has not already complied with voluntarily is the demand that Red Hat recall all products that have already been released from Red Hat to third parties in Red Hat's chain of distribution.

27. Monotype's request that the Court order Red Hat to remove all products from warehouse and store shelves, as well as product in-shipment, all to delete a miniscule amount of code relating to two typeface designs, could be potentially devastating.

28. If the Court were to grant Monotype's request, it would cost Red Hat millions of dollars in replacement, shipping and return costs, as well as lost sales.

29. Because Red Hat's stock price is influenced by its earnings, the cost to Red Hat from the requested preliminary injunction could translate into a loss of tens of millions of dollars in terms of the value of Red Hat's overall market capitalization.

### Portion of Red Hat's Operating System Which is Allegedly Infringing

30. Although Monotype's requested injunction would require Red Hat to recall from the chain of distribution entire copies of the Red Hat Linux operating system, the portion of the code which is allegedly infringing is negligible.

31. Out of approximately 2,800 modules in the Red Hat Linux operating system, the font software code which Monotype has complained about constitutes only a portion of one module containing the vectors which define certain typefaces.

32. Moreover, the inclusion of the fonts that Monotype has complained about was never intended to – and never did – enhance the value of the Red Hat Linux operating system.

33. Historically, users of Red Hat's software have not been concerned with the particular fonts available with the operating system. Most users have been interested in the Red Hat Linux operating system to run computer servers which are not dependent on use of particular

fonts, rather than desktop applications for which fonts may be more important. Therefore, when the fonts challenged by Monotype were removed as a voluntary remedial measure, it did not change the value or pricing of Red Hat's software.

### **Lack of Harm to Monotype**

34. Monotype's claim that it is suffering irreparable harm by the inclusion of allegedly infringing code in Red Hat's operating system ignores the fact that users can freely download Monotype's font software from Microsoft's website.

35. Microsoft makes Monotype fonts – including Times New Roman and Arial – available from the "typography" section of its website.

36. There is no charge for these downloads. An end user simply needs to agree to a "click" license on the website. A copy of this license is attached to this Affidavit as Exhibit 2.

37. The license terms permit any end user to download or use the font software for their personal use regardless of what operating system they may be running.

38. It is a relatively simple matter to download Monotype's fonts from Microsoft's website and use them with the Red Hat Linux operating system.

39. Therefore, if Red Hat had not included the allegedly infringing code in its operating system software, any user who wanted could have downloaded and used Monotype's fonts software for Times New Roman and Arial.

40. Likewise, if the Court were to order Red Hat to recall its software from the chain of distribution in order to remove the allegedly infringing font software – at great cost to Red Hat – this would ultimately have little effect on the availability of Monotype's font software. End users would still be able to obtain font software for Times New Roman and Arial with a free download from Microsoft's website.

Furthermore, the affiant sayeth not.

This the __18__ day of July, 2002.

By: _____
Preston Brown

Sworn to and subscribed before me

this __18th__ day of July, 2002.

_____
Notary Public

My Commission Expires:

__11/21/2004__

OFFICIAL SEAL
Notary Public – North Carolina
County of Wake
Amy B. Ross
My Commission Expires 11/21/2004

# See Case File for Exhibits